Albert V. Brandimore v. Commissioner.
Brandimore v. Commissioner
Docket No. 42167.
United States Tax Court
T.C. Memo 1955-32; 1955 Tax Ct. Memo LEXIS 317; 14 T.C.M. (CCH) 111; T.C.M. (RIA) 55032; January 31, 1955
Donald G. Tripp, Esq., 1423 Ford Building, Detroit, Mich., for the petitioner. Robert J. Fetterman, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and asserted penalties with respect to petitioner's income taxes for the calendar years 1948 to 1950, inclusive, as follows: lh
50% penalty
under sec.
Year
Deficiency
293(b)
1948
$ 358.00
$179.00
1949
330.44
165.22
1950
436.00
218.00
$1,124.44
$562.22
The only issues presented are whether or not petitioner understated his gross income on his income tax returns filed for any of the foregoing taxable years and, if so, to what extent, and whether or not any part of any deficiency arising from such understatement was due to fraud with intent to evade tax. *318 Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. The petitioner is a resident of Battle Creek, Michigan, and filed his federal income tax returns for the years in issue with the collector of internal revenue for the district of Michigan. During such years he was unmarried and in his middle thirties. From January of 1941 until June of 1945 petitioner was in the United States Army, the last three years in the European theatre. He was a first sergeant for the last two years and his pay, including overseas pay, at this grade was $120 a month, from which $22.50 was deducted as part of a dependency allowance for his mother and $10 for war bonds. From time to time he also sent additional funds to his mother with which to buy bonds. Petitioner kept the balance of his pay and his winnings from gambling on his person or in his barracks bag and when he was discharged in June of 1945, he had approximately $2,300 in cash in his possession. Petitioner lived with his brother after his discharge but due to his desire to relax for awhile and to a strike at the plant of his former employer, it was not until October of 1945 that he actually *319 returned to work. During part of this time, at least, he drew unemployment insurance benefits. In January or February of 1946, petitioner took a one month sick leave during which time he and a companion drove to California and back at a cost of about $100 apiece. They used petitioner's car for which he had paid $850 in December of 1945. Upon his return, petitioner's employer assigned him to new duties and he remained on this job until June of 1948 earning approximately $3,000 a year. In June of 1948 petitioner started his own business under the name of East End Social Club. It consisted of a card room run by the petitioner as a private club on a membership basis. The membership fee was $2 a year and there were no restrictions on the use of such funds by petitioner. Additional income was obtained by petitioner through charges to the card players based on either the number of games played or the length of time a table was in use. The club could accommodate four tables and in January 1950 petitioner installed pool tables. For part of the time petitioner sold sandwiches, coffee, soft drinks, cigars and cigarettes. In this connection he also operated an associated business on adjoining *320 premises under the name of East End Cigar Store. Although he did not have a license to do so, petitioner occasionally sold liquor but only to control the drinking of the club's patrons who would otherwise have brought their own bottles. When a bottle had been paid for by the sale of drinks, petitioner did not charge for the balance consumed and such sales were not a source of net revenue. Less than a bottle a day was consumed. During 1948 petitioner kept track of all sales through the East End Cigar Store by means of a cash register tape to the total of which he added the amount in a change box in which he collected table rentals. The total of the cash register tape and the total in the change box, together with the total of disbursements, were entered separately in daily record sheets for the club and for the cigar store. If any excess was received on the liquor sales over the cost of the bottle it was added to the daily table rentals. Sales of chances on tip boards, a form of gambling, were also included in the amount of table rentals. A bookkeeper, one Frawley, employed by petitioner on a part-time basis, prepared monthly statements on the operation of both the East End Cigar *321 Store and the East End Social Club from the daily cash records and from bills and receipts retained by petitioner. Frawley also prepared a summary statement of petitioner's business for the period June 1948 through December 1948, as well as petitioner's 1948 income tax return, from the figures compiled by him on the monthly statements. The monthly sheets and the summary thereof supported by the daily cash record and receipted bills constituted petitioner's books and records for 1948. He maintained no formal books of account on the double entry system. In 1949 petitioner employed Simplified Tax Records Company of Lansing, Michigan, to compile a monthly report from his daily cash sheets and receipted bills and to prepare his 1949 income tax return. In 1950 petitioner compiled his own monthly reports on forms supplied by the Records Company from similar supporting data until November, and the Records Company compiled the reports for the balance of the year and prepared petitioner's tax return. The total receipts shown by the 1950 records, including occasional receipts from the operation of pin ball machines and from rent received for use of the premises by others on a daily basis, amounted *322 to $10,837.10 but the sum of $10,802.80 was reported on the return and petitioner was unable to explain the reason for the difference of $34.30. Upon his discharge from the Army, petitioner kept the $2,300 in cash he had brought back with him in a fireproof box in the cellar of his mother's home. He used some of this fund from time to time and had expended most of it by the time of the hearing. On December 9, 1948, petitioner leased a safe deposit box from the Security National Bank of Battle Creek, Michigan, in which he kept his birth certificate, licenses, and discharge papers. For six or eight months during 1949 or 1950 he kept this cash in the box. The petitioner did not tell the internal revenue agent who examined his returns that he had any specific amount of cash on hand at the close of 1947 and 1948. During 1948 the petitioner had an apartment on East Michigan Avenue for which he paid $8 to $10 a week. Petitioner's food expenses were about $1 a day since he ate sandwiches at his club where he worked approximately 14 hours a day and a number of meals at the home of his mother and his brother. He had a 1941 Chevrolet but had no recollection of what his automobile expenses *323 were during 1948. During 1949 and 1950 petitioner paid $10 a week rent for his apartment and his meals continued to cost him about $1 a day. Petitioner's total personal expenditures, both deductible and nondeductible, and his federal income taxes for the years in issue were as follows: 1948
1949
1950
Rent
$ 416
$ 520
$ 520
Food
365
365
365
Car
125
125
200
Insurance on car
90
90
90
Charities
10
30
30
Clothes
100
Entertainment and other
expenses
520
520
520
Federal income tax
67
460
234
Total living expenses and
federal income taxes
$1,593
$2,110
$2,059
Petitioner had one employee when he first started his business who cleaned the premises and assisted petitioner in serving his customers. In 1949 petitioner had one employee whose salary was $30 a week for the entire year, a second employee to whom he paid $30 a week for the first six months of the year and who was replaced by a third employee to whom he paid $40 a week for the second six months. In 1950, he paid one employee $40 a week for the entire year and a second employee $30 a week for 15 weeks and a third employee, who replaced the second, $20 a week for 11 *324 weeks. The cigar store and social club were open seven days a week, from 9 a.m. to 12 midnight on six days and from 12 noon until 4 p.m. on Sundays. No entries were made in petitioner's records of Sunday receipts but any receipts were included in the totals for Monday. The petitioner had the following bank accounts during the years involved: Account name
Bank
Type
Opened
Albert Brandimore or Mrs. William Brandimore
Security National Bank
Savings
10- 5-35
Albert V. Brandimore
Same
Checking
7-15-48
East End Cigar Store by Albert Brandimore
Same
Savings
3- 2-49
The Mrs. William Brandimore listed above is petitioner's mother. On December 10, 1945, petitioner withdrew $850 from the joint savings account with his mother to purchase a car. About May 1950 petitioner purchased a Packard automobile for $2,366 cash in a transaction which did not involve trading in his old car. Approximately $500 of the purchase price came from the $2,000 in cash which petitioner had in safekeeping in his mother's home but petitioner was unable to recall the source of the balance of $1,800 except that it did not come from his bank accounts nor from the redemption of *325 any Government bonds. The portion of petitioner's income tax return for 1948 dealing with the operation of his business agreed with the totals shown on the summary sheet for that year prepared by the bookkeeper, Frawley, with the exception that $34.22 depreciation not shown on the statement was taken on the return. The return for 1949 was in agreement with the summary of the monthly reports prepared by Simplified Tax Records Company with the exception of a small amount of expenses which were less on the return than on the petitioner's records and with the further exception of the figure for gross receipts. This latter discrepancy was due entirely to the netting of gross receipts on petitioner's records by the deduction of merchandise purchases, whereas both amounts were reflected in the tax return but both methods gave the same end result. With minor discrepancies, the 1950 return was in agreement with the summary records prepared for that year by petitioner and by Simplified Tax Records Company. On December 28, 1950, petitioner's business was closed by a police raid and petitioner was subsequently charged with keeping a gambling house and arrested. He pleaded guilty and was placed *326 on probation for two years and fined $250 plus $250 court costs. The sentencing judge took into consideration, among other factors, that apart from a number of traffic violations and an arrest in 1940 for disorderly conduct for fighting, which resulted in a $10 fine, petitioner had never previously been arrested for any serious offense. Petitioner's assets, liabilities and net worth on December 31 of 1947 to 1950, inclusive, were as follows: Assets
12/31/47
12/31/48
12/31/49
12/31/50
Security National Bank: Savings account
$1,663.92
$1,725.08
$1,942.36
$ 1,961.83
Savings account
821.75
1,100.27
Checking
737.68
622.03
391.20
Cash on hand
2,300.00
1,500.00
2,000.00
1,500.00
U.S. Series E. Bonds at cost
993.75
993.75
1,028.75
1,028.75
Armed Forces leave bond - face value
700.00
700.00
700.00
700.00
Real estate
750.00
750.00
750.00
750.00
Automobile - cost
850.00
850.00
850.00
2,366.00
Business furniture and fixtures
830.88
948.49
1,770.49
Business inventory
250.00
240.00
210.00
Income tax overpayments
125.90
226.00
Loans receivable
400.00
Total assets
$7,257.67
$8,463.29
$9,903.38
$12,404.54
Less: Depreciation taken
34.22
143.60
370.26
Net assets
$7,257.67
$8,429.07
$9,759.78
$12,034.28
Liabilities
0
0
0
0
0
Net worth
$7,257.67
$8,429.07
$9,759.78
$12,034.28
Increase in net worth
$1,171.40
$1,330.71
$ 2,274.50
*327 The understatement in petitioner's income for the years in issue was as follows: 1948
1949
1950
Living expenses and federal income taxes
$1,593.00
$2,110.00
$2,059.00
Increase in net worth
1,171.40
1,330.71
2,274.50
Total income
$2,764.40
$3,440.71
$4,333.50
Income reported
1,102.66
3,628.75
2,150.34
Understatement of gross income
$1,661.74
$2,183.16
Petitioner's returns were assigned to an internal revenue agent for audit after petitioner's name was obtained by the Internal Revenue Service from the police records and the matter was classified as a racketeer case. The agent found that the petitioner did not have a balance set of books which he could verify with respect to receipts and expenditures and, in accordance with Service procedure in such cases, prepared a computation of petitioner's income for 1948 to 1950, inclusive, on the net worth method. During conferences with the agent in connection with the audit, petitioner refused to make any statement as to the amount of cash he had on hand during the period. The petitioner's records do not reflect his true income for the years 1948 and 1950. No part of the understatement of *328 petitioner's income for the years 1948 and 1950 was due to fraud with intent to evade tax. Opinion LEMIRE, Judge: By use of the net worth method, the respondent determined deficiencies totaling $1,124.44 in petitioner's income tax for the years 1948 to 1950, inclusive, arising from alleged understatements of gross income aggregating $6,652.67 for the three years. Petitioner had operated a cigar store and card room business during all of this period except for the first six months, which business had been terminated by a police raid on December 28, 1950. Petitioner subsequently pleaded guilty to a charge of keeping a gambling house and was placed on probation for two years in addition to being fined a total of $500. An internal revenue agent computed petitioner's income under the net worth method because petitioner, by dint of his conviction on the gambling charge, had been placed on a racketeer list and since the agent felt petitioner's books and records were not adequate to support an audit of his returns. Petitioner contends that the use of the net worth method is not authorized since his books and records were complete and adequate for the purpose of computing net income, *329 and, as an alternative, that even after giving consideration to the increase in net worth for each year, the balance of reported income available for living expenses was sufficient for petitioner's support and does not sustain the respondent's determination of deficiencies. We have carefully examined petitioner's records for the years 1948 to 1950, inclusive, and have considered the testimony of the accountant called on his behalf to the effect that the annual summary statements were, with only minor discrepancies, in agreement with the tax returns and that the disbursements shown thereon were supported by vouchers. It is quite evident that petitioner has made a serious effort to keep sufficient records and receipted bills to compute his income and to prepare his tax returns and that his expenses have been classified with considerable care. While petitioner's records, on the surface, appear to clearly reflect his income, certain discrepancies were noted between his daily cash disbursement record and his monthly summaries and it was not possible to ascertain what expenses, if any, such as those for food, might have been for his personal use. Furthermore, there was no way in which *330 the cash receipts purportedly reported in full on the daily memoranda could be verified. Petitioner testified that the cigar store receipts were recorded on cash register tapes, but if those had been preserved, they were not submitted in evidence. Despite the apparent overall adequacy of petitioner's records for the purposes of his business, the respondent is not barred from challenging their accuracy and completeness by means of the net worth method, for as we stated in Estate of W. D. Bartlett, 22 T.C. 1228 (Sept. 21, 1954): "* * * Even where the taxpayer presents a set of books that appear superficially adequate, the application of the net worth method may show such a substantial variance with the reported income as to suggest the untrustworthiness of the books. * * *" The unexplained increase in net worth over the income reported on the petitioner's returns is cogent evidence that either there was unreported income or that the records were inadequate, inaccurate or false. Morris Lipsitz, 21 T.C. 917, 931. There is nothing in section 41 of the Internal Revenue Code of 1939 that prevents the Commissioner from using the net worth method to show that *331 the income reflected by the taxpayer's books and records was incorrect or false. Estate of George L. Cury, 23 T.C. 305 (Nov. 23, 1954); cf. Henry B. Mikelberg and Rose R. Mikelberg, 23 T.C. 342 (Nov. 23, 1954). The cash nature of petitioner's business necessitates the making of some independent verification of his receipts. The parties have stipulated as to petitioner's assets and liabilities on December 31 of 1947 to 1950, inclusive, and these amounts have been incorporated in our findings. The only disputes are with respect to a cash fund of $2,300 which petitioner asserts represents army gambling winnings which he kept in a box in his mother's home and also as to the amount of petitioner's living expenses during the years in issue. We had full opportunity to observe the petitioner on the stand and we have given full credence to his testimony concerning the cash fund. One of the factors that has led us to accept petitioner's word is the fact that no attempt was made to create a somewhat larger fund which would have greatly assisted petitioner in completely offsetting the Commissioner's determination of deficiencies. However, even after giving effect *332 to the $2,300 cash on hand, it was apparent from the net worth statement as set forth in our findings that petitioner had income greater than that which he had reported. While no records were introduced, petitioner did testify in some detail as to his living expenses during the years in question and from this we have reached the best estimate possible of his personal expenditures for the period. Cf. Cohan v. Commissioner (C.A. 2, 1930), 39 Fed. (2d) 540, 544. Our computation of the resulting understatement of income is set forth in the foregoing findings of fact. It is based upon the net worth method since, despite their apparent adequacy, we have found as an ultimate fact that petitioner's records do not reflect his true income for 1948 and 1950. Although the evidence sustains, in part, the respondent's determination of deficiencies for 1948 and 1950, we are of the opinion that respondent has failed to prove by clear and convincing evidence that any part of these deficiencies was due to fraud with intent to evade tax. Sec. 1112, Internal Revenue Code (1939); Henry S. Kerbaugh, 29 B.T.A. 1014. The fact that petitioner was convicted of running a gambling *333 house, a point emphasized by respondent, does not prove that he was guilty of fraudulent evasion of tax. J. William Schultze, 18 B.T.A. 444. Decision will be entered under Rule 50.